IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN McKITRICK | ) | CASE NO. 3:08CV0597 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| CLIFFORD SMITH, Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND RECOMMENDATION |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is Stephen McKitrick's ("McKitrick") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on March 3, 2008.  McKitrick is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. McKitrick*, Case No. 2002-CR-132 (Hancock County 2003).  For the reasons set forth below, the magistrate judge recommends that the petition be dismissed.

I.  Procedural History

The state appellate court reviewing McKitrick's conviction and first sentencing found the following facts to be relevant to his case:

{¶ 2} On July 19, 2002, 72 year old Maxine Beard ("Beard") was home alone.  Her phone rang numerous times between 2:00 am and 4:00 am.  Beard did not answer the phone and later took the phone off the hook.  At approximately 7:00 a.m., Beard heard knocking on the patio door located in her bedroom.  Beard recognized the

person as McKitrick, a former tenant of Beard's. McKitrick continued to bang on the windows and doors. Frightened, Beard got out of bed to contact the sheriff's office, but the phone line was dead. Soon after, Beard heard a window shatter in the house. Consequently, Beard grabbed her purse and exited from the other side of the house. While trying to get to her car, McKitrick grabbed Beard and physically restrained and assaulted her as she yelled for help. Eventually, Beard got away from McKitrick and rang a dinner bell located on the property. McKitrick then caught her again, assaulted her, and forcibly took Beard's purse. After discovering that she only had a few dollars, McKitrick demanded that Beard write him a check for $900. In exchange for the $900, Mckitrick released Beard and she drove to safety. An investigation by the Hancock County Sheriff's Department revealed that Beard's phone lines had been cut. Additionally, wire cutters and two bags of crack cocaine were found in McKitrick's car.

{¶ 3} On July 23, 2002, McKitrick was indicted for Kidnapping[1] in violation of R.C. 2905.01(A)(2), a felony of the first degree, and Robbery, in violation of R.C. 2911.02(A)(2). McKitrick plead not guilty to both counts, and a jury trial was scheduled. On January 6, 2003, McKitrick pled guilty to both counts in the indictment.

{¶ 4} On March 26, 2003, a sentencing hearing was held at which the trial court sentenced McKitrick to eight years of prison for kidnapping and four years for robbery to be served consecutively for an aggregate twelve years in prison.

State v. McKitrick, 2003 WL 22228656, at *1 (Ohio App. Sept. 29, 2003) (spelling in the original).

McKitrick timely appealed his sentence to the state appellate court. In his brief in support of his appeal, McKitrick asserted the following assignment of error:

THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES, AS THE SENTENCES ARE CONTRARY TO LAW.

On September 29, 2003, the state appellate court overruled McKitrick's assignment of error and affirmed the judgment of the sentencing court.

McKitrick filed a timely notice of appeal in the Supreme Court of Ohio. In his

---

[1] Ohio spells "kidnaping" with a double "p." It will appear in that spelling, therefore, in all quotations of an Ohio source.

2

memorandum in support of jurisdiction, McKitrick presented the following proposition of law:

> IMPOSITION OF CONSECUTIVE SENTENCES ARE [sic] CONTRARY TO THE INTENT OF OHIO REVISED CODE 2929.14 (E), (4), (b), WHERE THE PRIMARY OFFENSE WAS TO FACITITATE [sic] THE COMMISSION OF ANY FELONY, OR WHERE NEITHER OF THE OFFENSES WARRANTED THE MAXIMUM SENTENCE, AS THE LEGISLATIVE INTENT OF R.C. 2929.14 (E), (4), (b) IS TO CURTAIL CONSECUTIVE SENTENCES.

On January 21, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

McKitrick filed in the state appellate court on November 25, 2003 an application to reopen his direct appeal pursuant to Ohio App. R. 26(B) ("R. 26(B)"). In his application, McKitrick claimed ineffective assistance of appellate counsel. The appellate court denied his application on January 22, 2004, finding that McKitrick had failed to show that there was any genuine issue as to whether appellate counsel had been ineffective.

McKitrick timely appealed the denial of his R. 26(B) application to the Ohio Supreme Court. He asserted one proposition of law in his memorandum in support of jurisdiction:

> A CRIMINAL DEFENDANT IS DEPRIVED OF HIS FIFTHE [sic], AND FOURTEENTH AMENDMENT RIGHT UNDER THE UNITED STATES CONSTITUTION, WHICH PROHIBITS THE IMPOSITION OF PUNISHMENT FOR AN ALLIED OFFENSE OF SIMILAR IMPORT WHERE AN ELEMENT OF ONE OFFENSE ENCOMPASSES ALL OF THE ELEMENTS OF THE OTHER OFFENSE.

On April 24, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On February 25, 2005, McKitrick filed in this court a petition for a writ of habeas corpus. McKitrick asserted three grounds for relief in his petition:

GROUND ONE: Imposition of consecutive sentences are contrary to law, and the

3

intent of the Ohio Legislature, and denied the petitioner due process of law and equal protection of the law in violation of his Fifth and Fourteenth Amendment Rights, when the two offenses involved arose as one course of conduct involving the same transaction and when the sentences imposed exceeds the maximum prison term permitted by law, as it relates to either offense.

GROUND TWO: Petitioner was denied the effective assistance of appellate counsel on his direct appeal of right when appellate counsel failed to raise the issue of allied offenses of similar import and/or double jeopardy on appeal, thereby denying the petitioner his 6th Amendment, constitutional rights to the effective assistance of counsel.

GROUND THREE: A Petitioner is denied his Fifth and Fourteenth Amendment rights under the United States Constitution which prohibits the imposition of punishment for an allied offense of similar import, where an element of one offense encompasses all of the elements of the other offenses, and upon conviction the Petitioner was denied due process and equal protection of the law in violation of his constitutional rights.

On May 10, 2005, the court conditionally granted McKitrick's petition with respect to the claims of double jeopardy and ineffective assistance of appellate counsel.  The court ordered that McKitrick be released from custody or resentenced.

The trial court conducted a resentencing hearing.  The state appellate court reviewing McKitrick's resentencing described it as follows:

On August 4, 2006, the trial court conducted an evidentiary hearing to determine whether the robbery and kidnapping were allied offenses of similar import.  The court continued the matter until August 9, 2006, at which time the court analyzed the evidence and relevant case law and concluded that the offenses were committed with a separate animus and therefore did not merge.  Since the district court had remanded the matter for "re-sentencing," the trial court resentenced McKitrick under the authority of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, imposing the same aggregate 12-year sentence.

State v. McKitrick, 2007 WL 2350989, *2 (Ohio App. Aug. 20, 2007).

McKitrick timely appealed his resentencing to the state appellate court.  McKitrick asserted two assignments of error in his appellate brief:

4

FIRST ASSIGNMENT OF ERROR:

> The trial court erred when it imposed multiple prison terms for Mr. McKitrick's kidnapping and robbery convictions, when those offenses constituted allied offenses of similar import, and were not committed seprately or with separate animus.  This error contravened R.C. 2941.25, and the Double Jeopardy Clauses of the state and federal constitutions.

SECOND ASSIGNMENT OF ERROR:

> The trial court erred when it imposed nonminimum, consecutive prison terms on Mr. McKitrick, a person who had never before served a prison term, as nonminimum, consecutive prison terms contravened the Sixth Amendment to the United States Constitution, *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct.2531, 159 L.Ed.2d 403; *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621.

On August 24, 2007, the state appellate court overruled McKitrick's assignments of error and affirmed the judgment of the trial court.

McKitrick timely appealed the appellate court's decision to the Ohio Supreme Court.

In his memorandum in support of jurisdiction, McKitrick raised three propositions of law:

FIRST PROPOSITION OF LAW

> In a criminal prosecution for kidnapping and robbery, when the restraint or confinement of the alleged victim is not prolonged, nor secretive, nor substantial, the offenses are not committed separately or with a separate animus, and the defendant cannot be sentenced to serve multiple prison terms.  When the trial court imposes multiple, consecutive prison terms for allied offenses of similar import, the sentence contravenes the Due Process and Double Jeopardy Clauses of the state and federal constitutions.

SECOND PROPOSITION OF LAW

> The imposition of nonminimum, consecutive prison terms on an individual who had never before served a prison term contravenes the Sixth Amendment to the United States Constitution.

THIRD PROPOSITION OF LAW

> The remedy that this Court set forth in *State v. Foster*, 109 Ohio St.3d 1,

5

2006-Ohio-856, violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

On January 23, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

McKitrick filed a petition for a writ of habeas corpus in this court on March 7, 2008. McKitrick's petition asserts three grounds for relief:

Ground 1:    IN A CRIMINAL PROSECUTION FOR KIDNAPPING AND ROBBERY, WHEN THE RESTRAINT OR CONFINEMENT OF THE ALLEGED VICTIM IS NOT PROLONGED, NOR SECRETIVE, NOR SUBSTANTIAL, THE OFFENSES ARE NOT COMMITTED SEPARATELY OR WITH A SEPARATE ANIMUS, AND THE DEFENDANT CANNOT BE SENTENCED TO SERVE MULTIPLE PRISON TERMS. WHEN THE TRIAL COURT IMPOSES MULTIPLE, CONSECUTIVE PRISON TERMS FOR ALLIED OFFENSES OF SIMILAR IMPORT, THE SENTENCE CONTRAVENES THE DUE PROCESS AND DOUBLE JEOPARDY CLAUSES OF THE STATE AND FEDERAL CONSTITUTIONS.

Ground 2:    THE IMPOSITION OF NONMINIMUM, CONSECUTIVE PRISON TERMS ON AN INDIVIDUAL WHO HAD NEVER BEFORE SERVED A PRISON TERM CONTRAVENES THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Ground 3:    THE REMEDY THAT THE OHIO SUPREME COURT SET FORTH IN STATE V. FOSTER, 109 OHIO ST.3D 1, 2006-OHIO-856, VIOLATES THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE UNITED STATES CONSTITUTION.

Respondent filed an Answer/Return of Writ on September 19, 2008 (Doc. No. 6). McKitrick filed a Response on October 16, 2008 (Doc. No. 7).   Thus, the petition is ready for decision.

II

*A.    Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective

6

jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

McKitrick was convicted in the court of common pleas in Hancock County, situated in the Northern District of Ohio.  At the time he filed his writ of habeas corpus in the Northern District of Ohio, he was in prison pursuant to that conviction.  His place of incarceration is the North Central Correctional Institution in Marion, Ohio.  This court has jurisdiction over McKitrick's petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of McKitrick's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160

7

(6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also* *Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

McKitrick has no remaining state remedies for his claims.  Because McKitrick has no remaining state remedies, his claims are exhausted.

*D.*     *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent does not contend that McKitrick has defaulted any of his claims.

8

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

9

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  This court will consider McKitrick's grounds for relief under the deferential standard of review accorded a state court's determination of a prisoner's constitutional claims.

A.    *Whether McKitrick's sentences for robbery and kidnaping violated due process and the prohibition against double jeopardy*

McKitrick alleges in his first ground for relief that his multiple sentences for robbery and kidnaping violate due process and the prohibition against double jeopardy. Respondent denies that McKitrick's sentencing violate the federal constitution.

1.    *Whether McKitrick's sentences violated due process*

"[D]ue process claims . . . may proceed either upon the theory that a deprivation has occurred without procedural due process or that there has been a substantive due process

10

violation; that is, either the official conduct shocks the conscience, as in *Rochin*, [342 U.S. 165 (1952)] or infringes a specific constitutional guarantee, as in *Monroe v. Pape*, [365 U.S. 167 (1961)]." *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir. 1985) (en banc).  As McKitrick does not claim that he was denied procedural due process, the court will treat his claim as an alleged violation of substantive due process.

Substantive due process arises from the conviction that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed . . . ." *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992) (quoting Comment, *Developments in the Law--The Constitution and the Family,* 93 HARV. L. REV. 1156, 1166 (1980)).  Government action can violate substantive due process in at least four ways:  (1) by violating rights enumerated in the constitution, such as the right to practice one's religion; (2) by violating unenumerated rights in the constitution, such as the right to travel; (3) by taking action which "shocks the conscience"; and (4) by subjecting an individual to arbitrary or capricious state action.  *See Pearson*, 961 F.2d at 1216-17.

McKitrick claims that his sentencing was arbitrary and capricious because it ignored settled Ohio law regarding the imposition of multiple punishments for a single course of conduct.  For an arbitrary action to result in a cognizable due process claim, the action must be more than "essentially unfair"; it must be "egregiously arbitrary." *Bell v. Anderson*, 2008 WL 4935941, *3 (6th Cir. Nov. 18, 2008).

Ohio's law regarding the imposition of multiple punishments for a single course of conduct is found at Ohio Rev Code § 2941.25.  The Ohio Supreme Court discussed this statute in *State v. Rance*, 85 Ohio St. 3d 632, 635-36, 710 N.E.2d 699, 703 (1999):

This court has stated that Ohio's multiple-count statute "is a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses."

With its multiple-count statute Ohio intends to permit a defendant to be punished for multiple offenses of *dissimilar import*.  If, however, a defendant's actions "can be construed to constitute two or more allied offenses of *similar import*," the defendant may be convicted (*i.e.,* found guilty and punished) of only one.  But if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C. 2941.25(B).

*Rance*, 85 Ohio St. 3d at  635-36, 710 N.E.2d at 703 (citations omitted).  To determine

whether crimes are of similar import,

Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other."  And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus.

*Id.*, 85 Ohio St. 3d at 638-39, 710 N.E.2d at 705.

Ohio courts have also determined that kidnaping and robbery are merged as allied

offenses of similar import except under certain circumstances:

In [*State v. Jenkins* (1984), 15 Ohio St.3d 164, 198 n.29, 473 N.E.2d 264, 295 n.29 (1984)], we stated that "implicit within every robbery (and aggravated robbery) is a kidnapping."  Therefore, a kidnapping specification merges with an aggravated robbery specification unless the offenses were committed with a separate animus. R.C. 2941.25(B).  Thus, when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime.  *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, syllabus. However, where the restraint is prolonged, the confinement is secretive, or the movement is substantial, there exists a separate animus as to each offense. *Id.*

*State v. Fears*, 86 Ohio St.3d 329, 344, 715 N.E.2d 136, 151 (1999).

In the instant case, the sentencing court initially determined that robbery and

kidnaping were not allied offenses of similar import and sentenced McKitrick to consecutive

12

sentences.  In ruling on McKitrick's first habeas petition, the district court found that robbery and kidnaping *were* allied offenses of similar import and sent the case back to the trial court for resentencing.  In reaching its conclusion that McKitrick must be resentenced, the district court noted that because robbery and kidnaping were crimes of similar import, McKitrick could only be resentenced to consecutive sentences if the state trial court sentencing McKitrick found that the offenses were committed separately or with a separate animus.

The state trial court resentenced McKitrick on August 9, 2006.  In reviewing McKitrick's appeal of his resentencing, the state appellate court made the following relevant findings of fact and law:

{¶ 7} In the first assignment of error, McKitrick contends that the kidnapping and robbery occurred with a singular animus: to obtain money.  As such, he argues that as a result of being sentenced for both offenses, he has been placed in double jeopardy.  In response, the state contends that the kidnapping continued beyond the robbery.  The state argues the robbery was complete when McKitrick took the purse and removed the money from it.  The state argues that Beard escaped and rang the dinner bell after McKitrick took the cash from her purse, and therefore, the events that occurred after he took the money constituted a separate kidnapping.  The state apparently contends that the robbery did not include the $900 check, as Beard used the check to negotiate for her car keys and her safety.

\*        \*        \*        \*        \*

{¶ 11} The Supreme Court has required that we compare the elements of the offenses in the abstract, that is, by the elements established by the General Assembly, and not based on the facts of each case.  *Rance,* at 639.  However, the court has previously held that kidnapping merges with robbery "unless the offenses were committed with a separate animus."  *State v. Fears,* 86 Ohio St.3d 329, 344, 1999-Ohio-111, 715 N.E.2d 136, citing *State v. Jenkins* (1984), 15 Ohio St.3d 164, 198, 473 N.E.2d 264.

{¶ 12} The "separate animus" exception leads us to the second part of the analysis. " 'In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses.  If the court finds either that the crimes were committed separately or that there was a separate animus for each

13

crime, the defendant may be convicted of both offenses."" (Emphasis sic.). *Jones,* at 14, quoting *Blankenship* at 117. Therefore, if the kidnapping is "merely incidental" to the other crime (robbery), there is no separate animus. *Fears,* at 344, citing *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, at syllabus. "However, where the restraint is prolonged, the confinement is secretive, or the movement is substantial, there exists a separate animus as to each offense." *Id.,* citing *Logan,* at syllabus. The Supreme Court has defined "animus" as the "same purpose, intent, or motive." *Blankenship,* at 119. With these standards in mind, we must review the record de novo. See *State v. Cox,* 4th Dist. No. 02CA751, 2003-Ohio-1935.

{¶ 13} The Supreme Court has also held that an offender may not benefit from the protection provided by R.C. 2941.25(A) unless he or she shows "'*that the prosecution has relied upon the same conduct to support both offenses charged.*' " (Emphasis sic.).*State v. Cooper,* 104 Ohio St.3d 293, 2004-Ohio-6553, 819 N.E.2d 657, quoting *Logan,* at 128. Therefore, we must review the record to determine whether the state relied on the same conduct to support both the kidnapping and robbery charges.

{¶ 14} The state apparently provided open file discovery to the defendant, and also filed responses to McKitrick's discovery request. The pertinent facts center around a very limited amount of time; when the purse was taken from Beard, when the money was removed from the purse, the movement and assault of Beard by McKitrick, the writing of the check, and Beard's final release by or escape from McKitrick.

{¶ 15} In discovery, the state filed the initial report created by the Hancock County Sheriff's Office. In that report, the deputy stated that Beard had revealed the following facts: as Beard was moving toward the back door to escape the home, she heard the glass break in the front of the house; as Beard tried to exit the home, McKitrick caught her and took her purse and car keys; McKitrick chastised her for not answering her phone and indicated that he needed money; McKitrick rifled through her purse and removed her cash; Beard escaped and rang the dinner bell; McKitrick caught her by the dinner bell and assaulted her again, dragging her toward her car; McKitrick indicated that Beard did not have enough money and demanded a check for $1,000, then reduced the amount to $900; Beard wrote the check and agreed to give it to him in exchange for her car keys; McKitrick gave her the car keys, took the check, and told her not to do anything "crazy" by way of reporting the offense or he would inflict physical harm on her.

{¶ 16} The deputy also asked Beard to make a written statement, which she did. In her written statement, Beard indicated that as she tried to escape through the back door, McKitrick caught her and grabbed her purse and keys. She wrote that he wanted her to "take a ride" with him, but she refused. She managed to escape

and run to the west side of the house where she rang the dinner bell.  McKitrick caught her by the dinner bell and assaulted her, dragging her to her car.  McKitrick stated that he needed money, so he went through her purse, took her cash, complained that she did not have enough cash and demanded that she write him a check for $1,000.  McKitrick then reduced the amount of the check to $900.  Beard wrote the check and gave it to him in exchange for her car keys.  McKitrick told Beard that if she "got crazy and reported this to the sheriff he'd really hurt [her], that [she would] really be sorry."

{¶ 17} In the sheriff's investigative report, completed by Detective Tim Grayson, he indicated that he spoke with Beard later in the day on July 19, 2002 (after the initial report and after she wrote her statement).  Grayson's report indicates that McKitrick took Beard's purse and keys when she tried to exit the home.  Beard was able to escape and ring the dinner bell, but McKitrick again caught her.  McKitrick assaulted Beard and took her to her car.  Near the car, McKitrick looked through the purse and took her cash.  McKitrick demanded that Beard write a check because she did not have enough cash.  Beard wrote the check in exchange for her car keys.  Finally, the affidavits to support search warrants indicated that McKitrick did not take the money from Beard's purse until after she rang the dinner bell and until after he dragged her to her car.

{¶ 18} On August 4, 2006, the court held an evidentiary hearing to determine if the kidnapping and robbery were allied offenses of similar import.  Deputy Bell, who wrote the initial sheriff's report, testified about what Beard had told him, and Deputy May's testimony essentially corroborated that Beard's window had been smashed and her phone lines had been cut.  The state submitted into evidence a copy of Beard's handwritten statement, and a copy of the Sheriff's Report was marked and admitted as Court's Exhibit 2.

{¶ 19} The trial court relied heavily on Beard's written report in reaching its decision and determined that the offenses were not allied offenses of similar import.  Specifically, the court stated:

> I think there is strong evidence and most important that from the victim, that the robbery was completed, in my judgment after reviewing that, when Mr. McKitrick pursued her, being Ms. Beard, and took her purse.  And perhaps the latest, took the money from her purse.  And the critical point that this Court look[s] at then is what happened afterwards.  After he accomplished that.

> Perhaps I should note parenthetically, I think the argument holds, even if I look to his argument after the check was written, because we have this strange set of circumstances where Mr. McKitrick took her purse, took her money out of the purse, found it to be insufficient, and then forced her to write a check to him which he later cashed.  But I believe one could argue,

15

> and I think it's fair to say, that the robbery was completed when he took the purse.  Certainly when he took the money.  Even if we were to argue that the robbery was not completed until he took the check, I think there's information evidence would suggests that these crimes were committed with separate animus.
>
> Why does the Court believe that?  If we take the position that when the purse was taken the robbery was completed, there was additional conduct that was engaged in by McKitrick, including chases [sic] her down after she broke free, restraining her, striking her and threatening her, continuing her restraining confinement.  That conduct occurred after he took the money.  And to some degree, based on her own statement, occurred after the check was written.
>
> So it appears to me much of the conduct of Mr. McKitrick and restraining of the victim occurred so she could not report the crime. * * *.

(Sentencing Tr., Oct. 30, 2006, at 10-11).

{¶ 20} McKitrick's main objective was to get money because he had visitation with his son that day, and he apparently had other debts or expenses that he needed to pay on the morning of the offenses.  McKitrick cashed the check soon after getting it, and by the time deputies located him later in the day on July 19, 2002, McKitrick had spent approximately $400.

{¶ 21} The state's contentions have changed over time in this case.  At the change of plea hearing, the assistant prosecutor stated:

> The conduct of the Defendant constituting the offense of kidnapping, in that he forcefully restrained Miss Beard from her liberty by precluding her from leaving the residence, by grabbing her, dragging her away from the bell where she was attempting to summon help, and he did this in order to facilitate the robbery offense where he threatened Miss Beard and forced her to write the check for him after he took the money from the purse.  Arguably the robbery was complete at the time he took the money from the purse.  Arguably the kidnapping was complete before he ever got as far as demanding the money.

(Hearing Tr., Oct. 30, 2006, at 23:5-16).  However, at the August 4, 2006 evidentiary hearing, the state argued that McKitrick prevented Beard from leaving the home, took her purse, and took the cash out of the purse *before* Beard escaped to ring the dinner bell.  The state argues McKitrick's abuse and movement of Beard after that point constitute the kidnapping, which continued past the end of the robbery.  Despite the changing theory of the case, the evidence shows that the state is relying on different conduct to prove its case.  Regardless of whether McKitrick took the

16

money from Beard's purse before or after she rang the dinner bell, he continued to restrain her liberty.  While McKitrick wanted additional money (hence the demand for the check), he also wanted to prevent Beard from reporting the offense to the sheriff. McKitrick had earlier cut the phone lines to the farmhouse.  After taking Beard's cash, he did not return her car keys, and clearly, she was unable to escape him on foot.  The state relied on this continued restraint, which extended beyond the robbery, to prove the kidnapping claim.

{¶ 22} On this record, and constrained by the Supreme Court's holdings in *Rance* and *Cooper,* we must hold that the offenses of robbery and kidnapping were not allied offenses of similar import.  The first assignment of error is overruled.

*State v. McKitrick*, 2003 WL 22228656, at *2-*6.

A determination that McKitrick's conduct after taking the money from Beard's purse exhibited a separate animus to kidnap Beard cannot be said to be arbitrary.  McKitrick's continued constraint of Beard after taking money from her purse allows a reasonable person to conclude that McKitrick completed a robbery then engaged in additional conduct evincing an animus for kidnaping.  That reasonable people could disagree with this conclusion does not make it arbitrary, much less egregiously arbitrary.  McKitrick's claim, therefore, that the Ohio courts' application of Ohio law was so arbitrary and capricious as to violate substantive due process is not well-taken.

McKitrick argues, however, that the state appellate court's opinion is not due any deference because the court did not conduct an analysis of whether the robbery and kidnaping were caused by separate animii.  According to McKitrick, the appellate court found, in contravention of *Fears* and the opinion of the district court, that robbery and kidnaping were not allied offenses of similar import.  Consequently, McKitrick argues, the state appellate court never reached the question of whether McKitrick's conduct was motivated by more than one animus.  McKitrick concludes that as the court never reached the question of whether more than one animus motivated his behavior, there is no analysis

17

of that issue that should be accorded deference.

McKitrick errs.  The state appellate court *did* examine whether the robbery and the kidnaping were caused by separate animii.  While the state appellate court's reasoning is not a model of clarity, paragraph 11 of the opinion makes clear that the appellate court believed that robbery and kidnaping were merged as allied offenses of similar import *unless* they were motivated by a separate animus.  In paragraphs 12 and 13 of the opinion, the state appellate court adds that McKitrick could not be convicted and sentenced separately for both offenses unless the state relies on different conduct to support each charge.  The bulk of the state appellate court''s analysis focuses on whether the state relied on different conduct to support each conviction.  Nevertheless, the state appellate court's conclusion that the two crimes were not crimes of similar import necessarily means that the state appellate court *did* conduct an analysis to determine whether the robbery and kidnaping were caused by a separate animus.  The state appellate court's opinion, therefore, is entitled to deference absent clear and convincing evidence that the opinion was factually erroneous, directly contrary to a holding of the Supreme Court, or unreasonably applied a holding of the Supreme Court.  McKitrick does not provide such clear and convincing evidence.

For the reasons given above, the court should reject McKitrick's argument that his sentencing violated his right to due process.

> 2.    *Whether McKitrick's sentences violated the prohibition against Double Jeopardy*

The Double Jeopardy Clause of the Fifth Amendment prohibits multiple punishments or repeated prosecutions for the same criminal offense.  *United States v.*

*Dinitz*, 424 U.S. 600, 606 (1976).  The prohibition applies to the states through the Fourteenth Amendment.  *Id.*

The Supreme Court, in *Blockburger v. United States*, 284 U.S. 299 (1932), described when multiple punishments for a course of conduct do not violate the Double Jeopardy Clause.  The court found, *inter alia*, that acts may be punished separately when they are motivated by separate animi, even if those acts are part of a common course of conduct:

> Each of several successive [acts] constitutes a distinct offense, however closely they may follow each other. . . . "[W]hen the impulse is single, but one indictment lies, no matter how long the action may continue.  If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.

*Blockburger*, 284 U.S. at 302 (quoting WHARTON'S CRIMINAL LAW (11th ed.) § 34).[2]

Ohio's law regarding the imposition of multiple punishments for a single course of conduct, Ohio Rev Code § 2941.25, employs the test for separate animus described in *Blockburger*.  According to *Rance*, a defendant may receive multiple punishments if each crime was committed with a separate animus.[3]  *Rance*, 85 Ohio St. 3d at 636, 710 N.E.2d

---

[2] The usual *Blockburger* analysis focuses on that court's other finding in the case, *viz.*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger*, 284 U.S. at 304.  The justification for this analysis is that the Double Jeopardy Clause is a check on courts, not on legislatures.  Thus, when legislative enactments have distinct elements and authorize cumulative punishment for a single act, there is no violation of the Double Jeopardy Clause.  *Albernaz v. United States*, 450 U.S. 333, 344 (1981).  In the instant case, however, the focus is on the first finding in *Blockburger*, *viz.*, whether McKitrick's acts were motivated by separate animi.

[3] *Rance* also employs the second, more common *Blockburger* test, examining whether the punishments imposed on a defendant are for crimes of dissimilar import (*i.e.*, the elements of the two crimes do not correspond to each other to such a degree that the

at 703.

The trial court found that McKitrick had separate animi for the robbery and the kidnaping of Beard, and the state appellate court affirmed this finding.  McKitrick does not show by clear and convincing evidence that the courts erred in this respect.  The trial court's and the state appellate court's findings that McKitrick had separate animi for the robbery and kidnaping, therefore, are due deference by this court.  Consequently, this court must conclude that because McKitrick had separate animi for the two crimes, his separate convictions for robbery and kidnaping did not violate the holding in *Blockburger*.

McKitrick argues, however, that the state court opinions in finding that he had separate animi for the two crimes unreasonably applied the Supreme Court holding in *Brown v. Ohio*, 432 U.S. 161 (1977).  In *Brown*, the defendant stole a car and went on a nine-day joyride.  He was convicted of theft and joyriding.  Ohio courts conceded that joyriding was a lesser included offense within the offense of auto theft and allowed Brown's conviction for both crimes.  Upon review, Supreme Court wrote in relevant part as follows:

> After correctly holding that joyriding and auto theft are the same offense under the Double Jeopardy Clause, the Ohio Court of Appeals nevertheless concluded that Nathaniel Brown could be convicted of both crimes because the charges against him focused on different parts of his 9-day joyride.  App. 23.  We hold a different view. The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units. Cf. *Braverman v. United States, 317 U.S. 49, 52, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942).*  The applicable Ohio statutes, as written and as construed in this case, make the theft and operation of a single car a single offense. Although the Wickliffe and East Cleveland authorities may have had different perspectives on Brown's offense, it was still only one offense under Ohio law. Accordingly, the specification of different dates in the two charges on which Brown was convicted cannot alter the fact that he was placed twice in jeopardy for

commission of one crime will result in the commission of the other).  *Rance*, 85 Ohio St. 3d at 635-36, 638-39, 710 N.E.2d at 703, 705.

the same offense in violation of the Fifth and Fourteenth Amendments.

*Brown v. Ohio*, 432 U.S. 161, 169-70 (1977).

McKitrick's argument that the state courts unreasonably applied the holding in *Brown* is not well-taken for two reasons.  First, *Brown* is distinguishable from the present case with regard to findings about the animus motivating the alleged acts.  The courts in *Brown* focused on Brown's *acts* and made no finding regarding his animus.  In McKitrick's case, the state courts found that McKitrick had a separate animus for each of the crimes of which he was convicted.  This distinguishes McKitrick's case from *Brown* and is sufficient to allow punishments for both robbery and kidnaping.  Second, the cases are distinguishable in the course of conduct grounding the respective offenses.  In *Brown*, the Supreme Court argued that the crime of joyriding and the crime of auto theft began at the same time and ended at the same time.  But in McKitrick's case, the state courts found that the kidnaping continued after the crime of robbery had been completed.  *Brown* is not applicable to those facts.  Consequently, it cannot be said that the state courts arrived at an opposite result from the Supreme Court on a set of facts materially indistinguishable from relevant Supreme Court precedent.  *Brown* does not require the conclusion that Ohio courts violated McKitrick's due process rights or violated the constitutional prohibition against Double Jeopardy is without merit.

McKitrick does not provide clear and convincing evidence that the state courts' determinations related to his first ground for relief were factually erroneous, were directly contrary to a holding of the Supreme Court, or unreasonably applied a holding of the Supreme Court.  Consequently, McKitrick's first ground for relief is without merit and should

21

be denied.

B.      *Whether McKitrick's sentence violated his Sixth Amendment rights*

McKitrick's second ground for relief contends that sentencing him to non-minimum and consecutive sentences violated his Sixth Amendment rights as described in *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Respondent denies that McKitrick's sentence violated any right protected by the Sixth Amendment.

Until 2006, Ohio sentencing statutes required sentencing a defendant to minimum and concurrent terms of incarceration unless the sentencing court determined that certain factors mandated longer or concurrent sentences.  Those factors, described at Ohio Rev. Code § 2929.12, required judicial factfinding of the sort later found to be unconstitutional by *Blakely* and *Apprendi*.  In *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), the Ohio Supreme Court found this portion of the Ohio sentencing statutes to be unconstitutional and severed it from the rest of the sentencing regime.  As a consequence of *Foster's* judicial reconstruction of the Ohio sentencing statutes, the Ohio Supreme Court directed sentencing courts as follows:

> Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range.  If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively.

*Foster*, 109 Ohio St. 3d at 30, 845 N.E.2d at 499.

McKitrick was sentenced to eight years' imprisonment for kidnaping and four years' imprisonment for robbery with violence.  The court ordered the sentences to be served consecutively. Under Ohio law, kidnaping is a felony of the first degree and robbery with

violence is a felony of the second degree.   Ohio Rev. Code §§ 2905.01(A)(2), 2911.02(A)(2).  The penalty range in Ohio for a felony of the first degree is three to ten years, and the range for a felony of the second degree is two to eight years.   Ohio Rev. Code § 2929.14(A)(1) & (2).

The state trial court entered McKitrick's sentence after the Ohio Supreme Court's decision in *Foster*.  Because *Foster* allowed Ohio courts to sentence a defendant to any term within the appropriate felony range or to consecutive sentences without making any judicial findings of fact, it cannot be said that McKitrick's sentence violated the holdings in *Blakely* or *Apprendi*.  *Blakely* and *Apprendi* prohibit a judge from sentencing a defendant to any sentence greater than the maximum sentence that may be imposed without making judicial findings of fact.  The maximum sentence to which the court could have sentenced McKitrick without making judicial findings of fact was consecutive terms of ten years and eight years.  McKitrick's sentence was, therefore, well within the range permitted by *Blakely* and *Apprendi*.  For this reason, McKitrick's second ground for relief is without merit and should be denied.

C.    *Whether McKitrick's sentence violated the Ex Post Facto and Due Process clauses*

McKitrick's third ground for relief argues that sentencing him to non-minimum and consecutive sentences under the Ohio sentencing statute re-fashioned by *Foster* violates the *Ex Post Facto* and Due Process clauses of the United States Constitution.  Respondent denies that McKitrick's sentencing violates either clause.

Article I, § 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 10.  The Constitution's bar against *ex post facto* laws,

23

however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia*, 378 U.S. 347 (1964). The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the due process clause. *Id.* at 458-461.

In the present case, McKitrick argues that because the events specified in the indictment occurred before the decision in *Foster*, applying *Foster's* judicially-reconstructed sentencing statute in re-sentencing McKitrick violated his right to be free from *ex post facto* laws. McKitrick cites *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1963), in support of the proposition that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *See also Rogers v. Tennessee,* 532 U.S. 451, 459 (2001).

McKitrick's argument is not well-taken for three reasons. First, the judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*. In *Bouie*, a South Carolina statute prohibited entry onto land after the posting

24

of notice prohibiting such entry.  Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained.  The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry.  Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property.  The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits.  According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*.  *Foster* did not criminalize any conduct which had not been criminal prior to the decision.  Nor did *Foster* increase the maximum penalty that could be handed down for a crime.  Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences.  *Bouie* does not prohibit this.

Second, McKitrick's position is foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977).  McKitrick contends that Ohio may not sentence him pursuant to a statute that it modified after McKitrick's criminal conduct because this fails to give him fair warning of his

25

potential punishment.  As the Eleventh Circuit first pointed out in *United States v. Duncan,* *400 F.3d 1297 (11th Cir. 2006),* *Dobbert* contradicts this proposition:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers.  The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.

*Duncan,* 400 F.3d at 1307-08.  Similarly, although Ohio's sentencing statutes at the time of McKitrick's criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts.  As the reinterpreted statute did not increase the maximum penalty to which McKitrick was potentially subject, McKitrick cannot say that the state failed to give fair warning of what was prohibited or of the potential penalties to which he would be subject if he committed those acts.  This is particularly true because McKitrick received the same sentence under the reformed statute as he did under the original statute.  *See* *United States v. Alston-Graves,* 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn,* 430 F.3d 518, 524-25 (2d Cir. 2005); and *United States v. Lata,* 415 F.3d 107, 112 (1st Cir. 2005).

Third, McKitrick' position is contradicted by *United States v. Booker,* 543 U.S. 220 (2005), and its progeny.  In *Booker,* the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence.  The Court found that such mandatory factfinding violated the holding in *Apprendi,* and excised those portions of the statute requiring judicial factfinding before increasing a base sentence.  The Supreme

26

Court also allowed sentencing courts to engage in factfinding in determining sentences by using the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding-- striking the mandatory findings on Sixth Amendment grounds and using the previously- mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform.  *Id.* at 249.  Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259- 60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality. *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498. Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced.  The resulting statutes, according to the Ohio Supreme

Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.[4] *Id.*

McKitrick argues that the Supreme Court's decision in *Cunningham v. California*, 549 U.S. 270 (2007), bars the sort of sentencing scheme created by *Foster.* McKitrick errs. Cunningham was sentenced under California's determinate sentencing law ("DSL"). The DSL presumed a middle range sentence, with judicial factfinding required before the court could impose a sentence in the lower or upper portions of the sentencing range. Courts were to find relevant "circumstances in mitigation" or "circumstances in aggravation" justifying such departures by a preponderance of the evidence. The California trial court sentenced Cunningham to a term in the upper portion of the sentencing range after finding circumstance in aggravation warranting such an upward departure.

The California Supreme Court found that the DSL survived *Blakely*, *inter alia*, because it gave the courts ample discretion in identifying aggravating facts warranting an upward departure. The United States Supreme Court disagreed. It found that despite the DSL's differences from the sentencing scheme struck down in *Blakely*, the DSL still required judicial factfinding before a court could impose a sentence higher than a middle range sentence. Consequently, the decision in *Blakely* prohibited DSL's system of judicial factfinding for upward departures.

The sentencing scheme fashioned by *Foster* does not suffer from the same infirmity

---

[4]  McKitrick argues that the Ohio Supreme Court's decision in *Foster* violated the principle of the separation of powers. Such arguments about the structure of a state's governance are matters for the individual states, not for the federal government. The only structural requirement imposed on the states by the Constitution is that each state shall have a republican form of government. Art. IV, § 4. All else, consistent with the federal rights guaranteed a state's citizens, is a matter for the individual states.

that doomed California's DSL.  Ohio's post-*Foster* sentencing statutes require no judicial factfinding whatsoever before a court may sentence a defendant to any sentence within the appropriate sentencing range or sentence a defendant to serve multiple sentences consecutively.  Thus, *Blakely* is inapplicable, and *Cunningham* has no impact on Ohio's current sentencing statute.

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *Alston-Graves*, 435 F.3d at 343.  McKitrick makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.  McKitrick' third ground for relief, therefore, is without merit and should be denied.

## III.  Conclusion

For the foregoing reasons, the magistrate judge recommends that McKitrick's petition be dismissed.


|                              | /s/ Nancy A. Vecchiarelli        |
| Date:  February 11, 2009     | United States Magistrate Judge   |


## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the**

29

**Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**